UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cengage Learning, Inc.,                                  Civil No. 08-1285 (DWF/SRN)

          Plaintiff,

v.                                                                            **MEMORANDUM**
                                                               **OPINION AND ORDER**
Jonathan K. Earl, Grant Scherer,
Cache House Publishing, Dreamworld
Studios, Inc., Lucas Tomasso,
and Connie Dayton,

          Defendants.

---

David W. Asp, Esq., and Susan E. Ellingstad, Esq., Lockridge, Grindal, Nauen PLLP and James F. Rittinger, Esq., Justin E. Klein, Esq., and Mark A. Lerner, Esq., Satterlee, Stephens, Burke & Burke LLP, counsel for Plaintiff.

William Z. Pentelovitch, Esq., and Paul B. Civello Esq., Maslon, Edelman, Borman & Brand, LLP, counsel for Defendant Jonathan K. Earl.

Richard J. Thomas, Esq., Burke & Thomas, PLLP, counsel for Defendants Grant Scherer, Cache House Publishing, and Dreamworld Studios, Inc.

Paul C. Peterson, Esq., Lind, Jensen, Sullivan, & Peterson, PA, counsel for Defendants Lucas Tomasso and Connie Dayton.

---

**INTRODUCTION**

       This case is before the Court on the motion of Defendant Jonathan K. Earl ("Earl") to dismiss Counts V and VI of the Complaint and for dismissal of the Complaint's request for the remedy of rescission with respect to Count XII, or, in the alternative, for

partial summary judgment. Earl has also brought a motion for sanctions. Plaintiff Cengage Learning, Inc. ("Cengage") opposes the motions. Cengage also responds with its own request for sanctions against Earl. For the reasons set forth below, the Court grants Earl's motion to dismiss in part and denies it in part. Specifically, the Court grants the motion as to Counts V and VI of the Complaint and denies the motion as to the request for the remedy of rescission with respect to Count XII. The Court also denies both parties' requests for sanctions.

## BACKGROUND

Earl founded a business, Outernet Publishing, LLC ("Outernet"), which he sold to Thomson Learning, Inc., the predecessor in interest to Cengage.[1] The sale occurred in July 2005 pursuant to the terms of an Asset Purchase Agreement (the "APA"). Cengage paid Earl an initial payment at the time of the purchase (the "Initial Payment"). In addition, the APA provided that Cengage would pay to Earl a subsequent amount (the "Purchase Price Surplus") to be determined based on a calculation of adjusted sales for the year ending December 31, 2005.

> According to Section 3.4.1 of the APA, the term "Adjusted Sales" is defined as:
>
> the net receipts (*i.e.*, gross receipts actually received by the Seller [Earl] or the Buyer [Cengage] plus shipping and handling income, less returns, allowances and credits and excluding taxes and processing fees) of the Products of the Business for the year ending December 31, 2005 (excluding the net receipts Products attributable to the Excluded Acquisition Titles).

---

[1] For ease of reference, the Court will refer in this opinion only to Cengage rather than differentiating between the two entities.

(Doc. No. 23 ¶ 2, Ex. A.)  If three times the Adjusted Sales equaled an amount greater than the Initial Payment, Cengage would pay the excess to Earl up to $1,950,000.  Under Section 3.4.2 of the APA, Cengage was to prepare a calculation of the Adjusted Sales according to Earl's past practice for making such a calculation and provide it to Earl.  The APA allowed Earl sixty days after delivery of the Adjusted Sales calculation to give Cengage written notice of any disagreement with its calculation.  The APA further provided that if Earl failed to give timely notice of disagreement with Cengage's calculation of the Adjusted Sales figure, "then the calculation of Adjusted Sales shall be final and binding upon the parties."  (*Id.*)

Cengage calculated the Adjusted Sales pursuant to the APA and in February 2006 paid Earl a Purchase Price Surplus of $1,950,000.  Cengage alleges that it later determined it erred in making the Adjusted Sales calculation and that it had overpaid Earl in the amount of $657,000.  Cengage requested that Earl return the alleged overpayment, but Earl has not done so.  Cengage's complaint alleges that Earl's receipt of and refusal to return the alleged overpayment violates the APA's implied covenant of good faith and fair dealing.  Cengage also alleges that Earl's retention of the alleged overpayment constitutes unjust enrichment.

Cengage also claims in the Complaint that while Earl was consulting for Cengage following the sale of Outernet, he agreed with the other defendants to tortiously interfere with Cengage's business relationships with its customers.  According to the Complaint, Earl and the other defendants agreed they would create a new company, Cache House Publishing ("Cache House"), to compete with Cengage and that Cache House used

images owned by Cengage in connection with soliciting Cengage's customers. Cengage alleges that these actions constituted a civil conspiracy and claims that one remedy to which it is entitled is rescission of the APA.

## DISCUSSION

### I.  Motion to Dismiss

#### A.  Standard of Review

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

**B.     Counts V and VI and the Alleged Overpayment**

Counts V and VI of the Complaint address Cengage's alleged overpayment to Earl of the Purchase Price Surplus.  Count V is titled a breach of contract claim, however Cengage admits that Earl has not breached a contract term.  Instead, Cengage claims that Earl has breached the APA's implied covenant of good faith and fair dealing.  Count VI is Cengage's claim that Earl has been unjustly enriched as a result of his retention of the alleged overpayment.  Earl seeks dismissal of Counts V and VI of the Complaint arguing that Cengage fails to state a claim under Fed. R. Civ. P. 12(b)(6) with respect to these counts.  According to Earl, the APA's unambiguous terms govern the rights of the parties and bar Cengage's claim for the alleged overpayment.  Earl, therefore, argues he is entitled to repose and that Cengage cannot pursue these claims.

The construction and effect of a contract presents a question of law, unless an ambiguity exists.  *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn. 1998).  A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation, and contractual language is given its plain and ordinary meaning.  *Id.*

The APA required Cengage to calculate the Adjusted Sales which in turn determined the amount of the Purchase Price Surplus.  The APA permitted Earl to contest Cengage's calculations, but in the event that Earl did not do so, the APA provided that the calculation of Adjusted Sales would be "final and binding on the parties."  (Doc. No. 23 ¶ 2, Ex A.)  The Court concludes that this language is unambiguous and that Cengage may not now make a claim against Earl for the alleged overpayment.

Cengage argues that the parties' bargain did not include the possibility that Cengage might err in its calculation of the Adjusted Sales figure. Cengage contends that because the APA did not contemplate this event, its claims are not foreclosed. The Court disagrees. Cengage most likely assumed that it would correctly calculate the Adjusted Sales figure when it negotiated the APA. Cengage is a sophisticated party, however, and could have foreseen that it might make an error in calculating sales numbers for a company it had fairly recently purchased. Cengage could have negotiated for a term that better protected its interests in that event. For instance, the parties could have agreed that the Adjusted Sales calculation would be final and binding upon Earl alone should he fail to contest the calculation. Instead, Cengage and Earl agreed that after sixty days the calculation would be final and binding on both parties.

Cengage's miscalculation does not trigger the equitable doctrines of mutual or unilateral mistake which would permit this Court to reform the APA regarding this contract term. A court may reform a written instrument if: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *Nichols v. Shelard Nat'l Bank,* 294 N.W.2d 730, 734 (Minn. 1980). Reformation is available, therefore, to remedy mistakes made by one or both parties during the process of making a contract which impacts the formation of the parties' bargain, not for mistakes that occur in connection with the later performance of the contract. Cengage has not alleged that Earl provided an incorrect method for

determining the Adjusted Sales or that he otherwise misled Cengage as to the way it was to calculate this figure.  Instead, Cengage admits that it simply made a mistake in conducting its calculations and that it failed to correct this mistake within the time period specified in the APA.  This kind of mistake does not alter the underlying bargain made by the parties when they negotiated the APA and does not justify reformation.

Reformation or rescission is also not warranted under a theory that Earl had a duty and failed to inquire as to the contract payment.  A party may have a duty to inquire when it receives an offer to contract that raises a presumption of error.  *See, e.g., Speckel by Speckel v. Perkins*, 364 N.W.2d 890 (Minn. Ct. App. 1985) (finding a duty to inquire when offer letter was inconsistent on its face).  Even leaving aside whether this principle would apply outside the contract formation process, the amount that Earl was paid is consistent with the parties' agreement such that it would not have raised a duty to inquire.

Cengage argues Earl waived the sixty-day provision by communicating with Cengage's employees as they tried to correctly determine the Adjusted Sales figure after the sixty-day window had expired.  Cengage also claims Earl waived the provision by failing to notify Cengage that he would assert his rights while he was corresponding with Cengage.  "Waiver has been defined as an intentional relinquishment of a known right, and while both knowledge and intention are essential elements, the knowledge may be actual or constructive and the intention can be inferred from conduct."  *Stephenson v. Martin,* 259 N.W.2d 467, 470 (Minn. 1977).

Earl's statements do not show he intended to waive his rights.  Cengage has not pointed to any communication in which Earl indicates such an intent.  In fact, in one of

the communications on which Cengage relies, Earl merely responds to an e-mail from Cengage by stating: "Thanks for the information." (Doc. No. 54 ¶ 11, Ex. C.) In another, Earl states, "Thank you for the heads-up and let me know what, if anything, you need further from me." (*Id.* at ¶ 12, Ex. D.) Further, waiver cannot be inferred from Earl's conduct. The communications between Cengage and Earl indicate that Cengage cast its actions as an attempt to clarify its accounting, not as a demand for repayment. Until it asked Earl to repay the alleged overpayment, Cengage had not triggered Earl's obligation to stand on his rights. His conduct, therefore, does not indicate an intent to relinquish his right to repose.

Cengage contends that Earl's actions breached the implied covenant of good faith and fair dealing in the APA, justifying a remedy with respect to the alleged overpayment notwithstanding the express terms of the APA. Minnesota law recognizes this implied covenant in all contracts besides sales and employment contracts. *Minnwest Bank Central v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004). The covenant imposes a duty of good faith that bars one party from unjustifiably hindering the other party's performance of the contract. *In re Hennepin Co. 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn. 1995).

Cengage's claims regarding this covenant fail for two reasons. First, Minnesota law does not recognize a cause of action for breach of the implied covenant separate from an underlying breach of contract. *Id.* at 503 (stating that "the implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract"); *see also Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994)

8

(applying Minnesota law and concluding that no separate cause of action under the implied covenant may be maintained). The APA specified the method by which Adjusted Sales and the Purchase Price Surplus were to be calculated. The APA does not include a process by which Cengage could subsequently remedy an error in its calculations because the contract expressly considers the figure final and binding after the time for contesting it has passed. Therefore, Cengage's claims are foreclosed by the parties' contract.[2] Cengage cannot maintain a claim for breach of contract in this situation and, in fact, admits that by receiving and retaining the alleged overpayment, Earl has not breached the APA.[3] (Doc. No. 52 at 24-25 (stating that "Earl is not in breach of any express provision of the APA by retaining the mistaken payment."))

Second, Minnesota courts hold the implied covenant requires parties to a contract not to "unjustifiably hinder" each other's performance and define bad faith as a "party's refusal to fulfill some duty or contractual obligation based on an ulterior motive . . . ."

---

[2]   Notably, the APA provides that if Earl contested Cengage's calculation and the parties were unable to reach an agreement, the matter would be submitted to arbitration. If this Court were to permit Cengage to pursue litigation against Earl for the alleged overpayment, it would be allowing Cengage to circumvent this arbitration provision. This is another way in which it seems the parties' agreement did not contemplate the outcome Cengage proposes here.

[3]   Cengage asserts that Earl was in material breach of other contract provisions and that he cannot rely on one provision while he is in material breach of another. Cengage cites *Williston on Contracts* for this principle. 26 Richard A Lord, *Williston on Contracts* § 68.41 (4th ed.) ("The defendant cannot refuse to abide by the contract and at the same time claim its protection when the other party is not in default.") Cengage, however, cites this provision out of context. This section of *Williston on Contracts* deals with whether damages on a quasi-contractual claim are limited to the amount provided in the contract. The section, therefore, suggests that a defendant may not breach a contract and then rely on the contracted amount as the full measure of damages thereby limiting the plaintiff's recovery. This provision is not relevant to the present dispute.

*Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998). The APA required Cengage to calculate the Adjusted Sales figure and pay the Purchase Price Surplus to Earl. The APA did not require Earl to confirm the accuracy of Cengage's calculation, but merely allowed him to contest the figure if he deemed it incorrect. Earl's decision not to contest Cengage's calculation did not unjustifiably hinder Cengage's performance and Earl did not fail in any contractual duty owed to Cengage by receiving the alleged overpayment. Further, Earl's retention of the alleged overpayment does not violate this covenant. The parties agreed that after sixty days, the calculation would be final and binding; by refusing to return the alleged overpayment Earl is enforcing this provision to his advantage. A party to a contract "does not act in bad faith by asserting or enforcing its legal and contractual rights." *Id.*; *Burgmeier v. Farm Credit Bank of St. Paul,* 499 N.W.2d 43, 50 (Minn. Ct. App. 1993).

      Cengage's claim in Count VI for unjust enrichment arising from Earl's retention of the alleged overpayment also fails. A claim for unjust enrichment arises when a party gains a benefit illegally or unlawfully. *Holman v. CPT Corp.,* 457 N.W.2d 740, 745 (Minn. Ct. App. 1990). An unjust enrichment claim can be based on failure of consideration, fraud, or mistake, or "situations where it would be morally wrong for one party to enrich himself at the expense of another." *Id.* Equitable relief cannot be granted, however, where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn. 1981). Cengage argues that the mere presence of a valid contract between the parties does not bar an unjust enrichment claim and this Court agrees. It is not the mere presence of an agreement

between the parties that bars relief here, however, but the presence of a contract provision expressly defining the parties' rights. The Court cannot use an equitable doctrine to set aside the unambiguous terms of the parties' agreement.

Further, "unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Cengage has not alleged sufficient facts to trigger liability for Earl with regard to this claim. Earl did not induce Cengage's error to his own benefit fraudulently or otherwise; Cengage merely made a mistake entirely on its own. Earl's actions in relying on a contract provision binding the parties to this calculation cannot be characterized as illegal or unlawful, or even morally wrong, when the parties specifically agreed to this arrangement.[4]

The Court is aware that Cengage's mistake has turned out to be a costly one. If the facts are as Cengage alleges and if the Court could award equitable relief in this case, it would likely do so. The Court, however, is constrained by the law and cannot rewrite the parties' agreement at this late stage to provide Cengage with an equitable remedy for

---

[4] Cengage argued at the hearing before this Court that Earl knew at the time he was told of the calculation that it was incorrect and yet remained silent. According to Cengage, Earl's silence was wrongful conduct and this supports its unjust enrichment claim. Cengage failed to plead that Earl had such contemporaneous knowledge in its Complaint. When this was brought to Cengage's attention, Cengage requested leave to amend its Complaint. The Court denies leave to amend the Complaint because Cengage's unjust enrichment claim is otherwise barred, as discussed above.

its unintended error.  The Court, therefore, dismisses with prejudice Counts V and VI of the Complaint.

### C. Rescission Remedy of Count XII

Earl seeks dismissal of Cengage's request for the remedy of rescission in connection with its claims for civil conspiracy.  Earl contends that Cengage has waived any right to this remedy because it filed suit fifteen months after it alleges it learned that Earl was competing with Cengage in violation of their agreements.  According to Earl, this delay in asserting the right to rescission bars Cengage from seeking this remedy.

Minnesota law has long recognized that a party may waive the right of rescission if it delays in asserting that right.  *McQueen v. Burhans*, 80 N.W. 201, 203 (Minn. 1899) ("[A party] is not allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligations by a rescission or a refusal to perform on his part.  If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still satisfactory and binding, he thereby waives all benefit of relief from the misrepresentations.")  Minnesota courts, however, have not settled on a bright line defining the length of the delay that will constitute a waiver.  *See Hemming v. Ald, Inc.*, 155 N.W.2d 384, 387 n.3 (1967) (discussing cases in which delays of only a few months were considered unreasonable and other cases holding delays of up to sixteen months were not unreasonable).

Therefore, "what is a reasonable time for rescission . . . must be determined by the total circumstances of each case and not by mere calendar computation alone." *Id*. at 387.  Where a party has engaged in affirmative acts of ratification rescission is barred

regardless of the length of time before the remedy is asserted. *Id*. Where the party only delays in asserting the right without other conduct, the party may lose the right to rescind "if [the delay] is so long, and the circumstances of such a character, as to establish an intentional abandonment of the right of rescission, or if it is so long that the other party has been put to a disadvantage, so that it would be inequitable to allow him to assert the right. . . ." *Zeglin v. Tetzlaff*, 178 N.W. 954, 956 (Minn. 1920). Though in some cases a delay is so substantial and the excuse for it so lacking that the right is deemed waived, courts are reluctant to preclude a party from a remedy. *Hemming*, 155 N.W.2d at 388.

In this case, the record is not yet sufficiently developed to permit the Court to conclude that Cengage delayed in bringing suit for so long a time that the right to assert the remedy of rescission has been waived. Though Cengage may not have commenced suit against Earl for fifteen months, it asserts it notified Earl before then that he was in breach of the APA and that Cengage and Earl engaged in negotiations regarding their dispute. It may be that the Court will ultimately determine that the circumstances of this matter warrant a finding that the transaction cannot now be unwound. The record does not contain enough information for the Court to make that determination now. The Court, therefore, denies without prejudice Earl's motion to dismiss the rescission remedy claimed with respect to Count XII of Cengage's Complaint.

**II.     Motion for Sanctions**

Earl has also brought a motion for sanctions against Cengage under Fed. R. Civ. P. 11. Earl contends that sanctions are warranted because Cengage ignored controlling precedent and its pursuit of the alleged overpayment is frivolous. Cengage counters with

its own request for sanctions against Earl under 28 U.S.C. § 1927 and under this Court's inherent authority, arguing that Earl's motion for sanctions is so meritless that Cengage's own request is justified.

Rule 11 provides that by presenting a pleading to a court, the attorney certifies that to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). If the Court determines that Rule 11(b) has been violated, it may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1). The Court finds that Cengage's claims, while ultimately not prevailing, do not rise to the level of sanctionable conduct. Therefore, the Court denies Earl's motion for sanctions.

The Court also denies Cengage's request for sanctions. Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under this statute, sanctions may be awarded when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard" for the attorney's duty to the court. *Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003). This standard is clearly not met by Earl's counsel's conduct in this case and Cengage's request for sanctions under § 1927 must be denied. The Court also denies Cengage's request that it sanction Earl's counsel

under its inherent authority to discipline for bad faith conduct.  *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998) (stating that a "district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power").  This Court finds that Earl's counsel has acted in good faith and, therefore, no sanction will be awarded under this Court's inherent powers.

## CONCLUSION

For the foregoing reasons, the Court grants Earl's motion to dismiss as it relates to Counts V and VI of the Complaint and dismisses these counts with prejudice.  The Court denies without prejudice Earl's motion to dismiss Cengage's request for the remedy of rescission with respect to Count XII of the Complaint.  The Court also denies both parties requests for sanctions.

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Defendant Jonathan K. Earl's Motion to Dismiss (Doc. No. 20) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  The Motion to Dismiss is **GRANTED** as to Count V and Count VI of the Complaint;

    b.  The Motion to Dismiss is **DENIED WITHOUT PREJUDICE** as to the remedy of rescission requested with respect to Count XII of the Complaint.

2.  Counts V and VI of the Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE**.

3.  Defendant Earl's Motion for Sanctions (Doc. No. 37) is **DENIED**.

4.     Plaintiff Cengage Learning, Inc.'s request for sanctions is **DENIED**.


Dated:  November 10, 2008       s/Donovan W. Frank
                                                          DONOVAN W. FRANK
                                                          Judge of United States District Court

16